UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO N. ADAMO,

  **Plaintiff,**

-v-            CASE NO. 2:07-CV-750-DNF

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

  **Defendant.**
_____/

# OPINION AND ORDER[1]

This matter is before the Court on the Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying his claim for Social Security disability insurance ("SSDI"). The Plaintiff timely pursued and exhausted his administrative remedies making this claim ripe for review under section 216(i) and 223(d), respectively of the Social Security Act. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1]  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred by Order to Magistrate Judge Douglas N. Frazier on April 17, 2008. (Doc .# 10).

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW

The plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Plaintiff filed an application for a period of disability and disability insurance benefits on September 14, 2005. The Plaintiff alleges disability beginning September 1, 2004, which was amended to October 20, 2005[2]. (Tr. 62-65, 72, 76, 82-84). The Plaintiff's application was denied initially and upon reconsideration on January 25, 2006 and upon reconsideration on March 31, 2006. (Tr. 13). The Plaintiff filed a request for hearing on April 26, 2006. (Tr. 13). The Plaintiff was represented by counsel and testified at the hearing held on August 2, 2006, in Ft. Lauderdale, Florida along with an impartial vocational expert. (Tr. 13, 328-325). Administrative Law Judge (ALJ) Robert B. Rae denied benefits in his decision dated December 7, 2006. (Tr. 13-21). The Plaintiff requested a review of

---

[2] The Plaintiff amended his onset date of disability to October 20, 2005, upon advice of counsel at the hearing. (Tr. 219).

the hearing decision and on December 6, 2007, the Appeals Council denied the request. (Tr. 10-12). The Plaintiff has exhausted his administrative remedies, and timely filed a complaint with this Court.

At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of October 20, 2005 through his date last insured of December 31, 2005. (Tr. 15). At Step 2 the ALJ found the plaintiff suffered from the following severe impairments: degenerative disc disease, hypertension, diabetes mellitus Type II. The ALJ determined that the Plaintiff's sleep apnea and obesity are not severe impairments. [Tr. 16]. Additionally the Plaintiff did not report a mental impairment in his disability report nor at his hearing. [Tr. 16]. At Step 3, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix I, Listing of Impairments, 20 C.F.R. §§ Part 404, Subpart P, Regulations No. 4. (20 C.F.R. 404.1520(d), 404.1525 and 404.1526. (Tr. 16). At Step 4, the ALJ determined the Plaintiff had the residual functional capacity to lift 20 pounds; walk or stand about six hours of an eight-hour workday; sit about six hours of an eight-hour workday; perform all postural activities occasionally and avoid concentrated exposure to hazards. [Tr. 17]. At step 5, the burden shifts to the Commissioner only after the Plaintiff has proven that he is unable to engage in past relevant work and to determine if there is other work available that the Plaintiff can perform. 20 C.F.R. §§ 494.1520(g), 416.920(g). In the instant case, the ALJ determined that through the date last insured, the Plaintiff's past relevant work as a construction superintendent did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. (Tr. 20).

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A. BACKGROUND FACTS:

The Plaintiff was born on November 14, 1962 and was forty-four years old at the time of the ALJ's decision. The Plaintiff has an eleventh grade education and work experience as a construction company owner/supervisor and laborer. The Plaintiff alleged he became disabled in October 2005, and his insured status expired on December 31, 2005. The issue in this case is whether Plaintiff established disability any time from October 20, 2005 through December 31, 2005. (Tr. 62, 66).

Dr. Fawaz Alfarra, M.D., treated the Plaintiff from June through November 2004 (prior to his disability onset date). Office notes consisted of a lumbar spine MRI report and medication lists. On June 8 and June 25, 2004, Plaintiff's blood pressure was 172/110, 165/92 respectively and his weight was 205 and 209 pounds respectively. [Tr. 177, 178]. Dr. Alfarra described the Plaintiff as a "very nervous person". The Plaintiff's prescriptions consisted of Wellbutrin and Ativan. [Tr. 179]. At the Plaintiff's next visit, Dr. Alfarra added Vicodin and Flexiril and refilled those prescriptions in July and September 2004. [Tr. 174, 176, 177]. In November 2004, Soma and Percocet were added to the Plaintiff's medications and "extra strength" Vicodin was prescribed. [Tr. 69, 70, 187, 188]. Dr. Alfarra advised Mr. Adamo to "[g]o to pain management for epidural management." [Tr. 169].

The Plaintiff's MRI dated September 21, 2004 revealed : "[G]rade I Retrolisthesis of L5 on S1; disk space narrowing at L5-S1 with degenerative end plate changes multilevel disc dessication "at each level of the lumbar spine with the exception of L2-L3. " [Tr. 172, 173].

Dr. Alfarra's records dated March 10 and March 31, 2006 reports elevated glucose levels. [Tr. 167, 168, 182-186]. On March 10, 2006 the Plaintiff's blood pressure was 165/98 and his weight was 256 pounds with a BMI of 32. [Tr. 168].

The Plaintiff was seen by Michael Miller, M.D., a pain management specialist. Dr. Miller recorded in October 2005 that the Plaintiff could only walk 20 feet without bad back pain which was also aggravated by weather, prolonged sitting/standing, and bending or lifting. The Plaintiff reported that he was unable to sleep because of his pain, but that medication helped. The Plaintiff had at least nine office visits with Dr. Miller regarding his

back pain which he described as pain, numbness and tingling in his legs and feet and that he used a cane due to the weakness in his legs. (Tr. 140-147). Dr. Miller's diagnosed "[d]egenerative disc disease of the lumbar spine with radiation". In March of 2006 Dr. Miller had added that the Plaintiff had diabetes mellitus and fell under "Obesity - aggravating DM," specifying two herniated discs. (Tr. 140). Dr. Miller had prescribed during the Plaintiff's course of treatment, Methadone, Lorcet, Soma, Xanax and added Restoril in December of 2005. (Tr. 140-147, 206).

The Plaintiff completed Pain Assessment forms in April, May and June of 2006. The Plaintiff rated his pain as a 10/10 without medication and 6/10 with medication. (Tr. 207-210). The Plaintiff advised that all activities worsened his pain, that the side effects from his medications impacted his sex life, caused numbness in his legs, eye twitching and loss of balance. Dr. Miller recorded on July 20, 2006, that the Plaintiff's diabetes was under "good control" but that he did have peripheral neuropathy of his feet. (Tr. 206).

On April 5, 2006, Dr. Miller provided a sworn statement advising that he saw the Plaintiff every three weeks, beginning on March 3, 2005, with his last visit occurring on March 16, 2006. (Tr. 151). Dr. Miller confirmed the diagnosis of the Plaintiff as "[d]egenerative disc disease of the lumbar spine with radiculopathy and two levels of herniated discs" based on the MRI taken on September 2004 which showed evidence of compression of the thecal sac and stenosis. (Tr. 151, 152).

Dr. Miller reported that the Plaintiff's impairments would require him to have frequent rest periods, including possibly the need to lie down for long periods during the day. (Tr. 157, 158, 160, 161). He opined that the Plaintiff would be unable to sustain full-time

work, and that he could lift no more than 10 pounds, otherwise his back pain would worsen and "[h]e could potentially ...have another herniated disk problem..., which would result in more pain." [Tr. 159]. Dr. Miller stated, "[H]e's currently under opiate medication," (Methadone, Lorcet, and Soma). [Tr. 159-160]. Dr. Miller concluded that the Plaintiff "[i]s not likely to improve as far as his back problem." [Tr. 163].

On July 13, 2006, orthopedist, William Buonanno, M.D., consented to give the Plaintiff a second opinion regarding his back pain, as well as provide answers to interrogatories. [196-205]. Dr. Buonanno recorded the Plaintiff's pain complaints as "[s]ciatica and radicular symptomatology in both his legs."[Tr. 196-197]. He advised that the Plaintiff's medications caused side effects that "[d]o impair his normal functions," and listed his medications as Methadone, three times a day; Hydrocodone, twice a day; Soma, three times a day; Restoril as needed for sleep; Xanax, twice a day; and Motrin. [Tr. 197, 199].

It was Dr. Buonanno's opinion that the Plaintiff '[h]as a permanent disability to his lower back," that his "[t]reatment has been appropriate," and that due to the length of time he has had chronic sciatica, he was not a surgical candidate. On the interrogatory forms, Dr. Buonanno gave a "very poor" prognosis and further opined that the Plaintiff had been unable to perform even sedentary work since September 2004. [Tr. 200-204].

On December 8, 2005, the Plaintiff was examined by hematologist/oncologist, Afzal Khan, M.D., state agency physician. [Tr. 120-122]. Dr. Khan recorded the Plaintiff's symptoms as low back pain radiating to his legs and feet, headaches and dizziness. [Tr. 120]. It was noted that the Plaintiff used a cane and favored his left leg while walking. Plaintiff's

blood pressure was 180/100; weight was 255 pounds and there was decreased motion in the neck and back [Tr. 120, 123]  Dr. Khan gave no opinion as to the Plaintiff's work-related functional ability and merely gave a diagnosis of chronic low back pain with history of herniated disks in the lower back, hypertension and obesity. [Tr. 121].

David Guttman, M.D., completed a physical RFC assessment form in January of 2006 and Gary Cater, completed a physical RFC assessment form in March of 2006. [Tr. 123-130, 132-139].  Both assessments found the Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently; stand or walk about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and unlimited ability (other than as shown for lift and/or carry) to push and/or pull (including operation of hand and/or foot controls).

The Plaintiff testified at his hearing held on August 2, 2006, that he was owner of a construction company from 1990 to 2000.  He confirmed that he currently had his own corporation and managed the properties that he owned, but in fact it was "(h]is wife who took care of the accounts because I forget a lot now." [Tr. 217, 222-225].  The Plaintiff testified he weighed "[a]lmost 260" and was 5'10" tall". [Tr. 217].  The Plaintiff related that his wife helps him out of bed and to the bathroom; that he really did not drive because of his medications and "[h]e falls asleep a lot and wouldn't want to endanger anyone". [Tr. 225, 227.  The Plaintiff testified that he goes back to Rhode Island "[t]o see his family once in a while, and to look at different properties [and to] see my physician, Dr. Buonanno". [Tr. 226].  He reported that he had been back only once in the current year, and stayed for four or five days but that his wife did not go with him because they could not afford it .[Tr.

226, 227].

The Plaintiff's counsel highlighted his work ethic, his successful business endeavors, and his "impeccable earnings" despite his limited education. [Tr. 218, 219, 221]. Counsel pointed out that the Plaintiff had "[s]low onset of degenerative changes" which resulted in his "stopping work altogether" in 2000, eventually filing for disability benefits, and "[s]eeing pain management finally in October '05". [Tr. 219]. Further, counsel confirmed that the Plaintiff had recently been diagnosed with diabetes and sleep apnea, and explained that the Plaintiff cannot even afford the CPAP machine needed for his sleep apnea.

**B.   SPECIFIC ISSUES:**

**(1)   THE ALJ COMMITTED REVERSIBLE ERROR FOR REJECTING THE OPINION OF DR. MILLER, PLAINTIFF'S TREATING PHYSICIAN BY FAILING TO PROVIDE GOOD CAUSE**

The Plaintiff argues the ALJ did not provide adequate reasons for rejecting the opinion of treating physician, Dr. Michael J. Miller. The Commissioner considers the following factors in determining the weight to be given any medical opinion: examining relationship; treatment relationship, supportability, consistency, specialization and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§404.1527(d). If a treating source's opinion regarding the nature and severity of a claimant's impairment is well-supported and is not inconsistent with the other substantial evidence, it will generally be given controlling weight. 20 C.F.R. § 404.1527(d)(2). However, even when offered by a treating source, an opinion about whether a claimant is disabled or unable to work can never

9

be entitled to controlling weight or given special significance because these are issues reserved to the Commissioner. 20 C.F.R. §404.1527(d). Social Security Ruling (SSR 96-5p,[3] *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986) (physician's statement that claimant is disabled is not dispositive of the issue of disability but must be considered).

The Plaintiff submitted a sworn statement from Dr. Miller to the ALJ on April 5, 2006. [Tr. 148-66]. Dr. Miller reported that he had treated the Plaintiff for degenerative disk disease of the lumbar spine with radiculopathy and herniated disks at L4-L5 and L5-S1 (151-52). Dr. Miller said that Plaintiff's primary complaint was low back pain radiating into both legs. [Tr. 153]. Dr. Miller was asked if the Plaintiff would be able to perform sedentary work during the time of his treatment, Dr. Miller replied:

> "I can't answer that for sure because I haven't really gone into the specifics of the duration of his ability to perform any specific function or, you know, when the pain occurs in that given scenario or how long he can perform that function until his symptoms begin, his low back symptoms."

Dr. Miller's first chart entry for the Plaintiff in the record is dated October 20, 2005.[4] [Tr. 18, 140-147, 206-10]. Dr. Miller treated the Plaintiff for pain and his notes dated November 10, 2005, reflect "[a]dequate control of pain" was consistently checked as one of the Plaintiff's "Treatment Goals Achieved'. [Tr. 140-146]. The record also indicates that the

---

[3] The ALJ also observed that, even if the Plaintiff was limited to sedentary exertion, he would be considered not disabled under the medical-vocational guidelines and the VE identified specific jobs that he could perform. [Tr. 19-20].

[4] Dr. Miller said his first chart entry for the Plaintiff was March 3, 2005, but the ALJ corrected that date with the documentation in the file. [Tr. 18, 140-47, 206-10].

Plaintiff did not have any side effects from medication, depression, or anxiety. The Plaintiff also reported not being able to sleep due to the pain, but this symptom improved with medication. Thus, the ALJ concluded that Dr. Miller's opinion was contradicted by his own treatment notes from the relevant period, as well as other evidence in the record, therefore, the opinion was not given controlling weight. [Tr. 17-18].

> **(2) THE PLAINTIFF CONTENDS THAT HIS TREATING PHYSICIAN DR. MILLER RECOMMENDED THAT THE PLAINTIFF USE A CANE, THEREFORE, THE ALJ'S FINDING THAT HE CAN PERFORM THE EXERTIONAL DEMANDS OF LIGHT WORK CANNOT BE SUSTAINED**

The Plaintiff is of the opinion that his use of a cane prohibits him from performing even light work. Although Dr. Miller's notes do document that the Plaintiff was using a cane as early as November of 2005, in his April 2006 statement, Dr. Miller admitted he had not recommended a cane. [Tr. 162]. However, after further questioning Dr. Miller stated that based on the Plaintiff's complaints regarding his walking and other postural limitations, a cane would be recommended. [Tr. 162]. However, on December 8, 2005, Dr. Afzal H. Khan observed that the Plaintiff was "able to ambulate around the office without device". [Tr. 120]. Therefore, the evidence did not demonstrate that the Plaintiff required a cane on or prior to December 31, 2005.

> **(3) THE PLAINTIFF CONTENDS THAT THE ALJ COMMITTED REVERSIBLE ERROR IN MIS-CLASSIFYING THE PLAINTIFF'S PAST RELEVANT JOB AS LIGHT WORK.**

The Plaintiff contends the ALJ incorrectly classified his former job as light work.

At the hearing, Vocational Expert, David Crystal, testified that the Plaintiff's previous work as a construction superintendent is defined in the Dictionary of Occupational Titles, Volumes I and II, Fourth Edition, Revised 1991, at Vocational Code No. 182.167.026, as requiring a "light" range of exertion and is skilled with a SVP (specific vocational profile) of 7. The vocational expert testified that the Plaintiff also acquired clerical skills, sales skills, skills of supervision, training, customer service, quality control, knowledge of equipment and supplies, use of hand and power tools, ordering, inventory and record keeping skills. [Tr. 18]. The Plaintiff described his work as requiring a very heavy level of exertion. [Tr. 18, 79-84].

Social Security Ruling 82-61 states: a claimant will be found to be not disabled when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the economy.

In this case, the vocational expert's testimony confirmed that the functional demands and job duties of a construction superintendent, as ordinarily required by employers, are compatible with the Plaintiff's RFC. [Tr. 230-41. The Plaintiff was properly found not disabled pursuant to 20 C.F.R. § 404.1520(f). *Jackson v. Bowen* 801 F.2d 1291, 1993 (11th Cir. 1986).

### (4) THE ALJ FAILED TO PROPERLY EVALUATE THE PLAINTIFF'S SUBJECTIVE COMPLAINTS

The Plaintiff contends that the ALJ did not evaluate his subjective complaints properly. When the evidence documents an impairment that could reasonably be expected

to produce the symptoms alleged by a claimant, the Commissioner evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1).

In the instant case, the Commissioner considered the objective medical evidence and information from the Plaintiff and his treating or examining physicians, as well as other factors such as evidence of his daily activities, the frequency and intensity of pain, precipitating and aggravating factors, medications taken and side effects and any other measures taken to alleviate the Plaintiff's pain. 20 C.F.R. § 404.1529(c)(2) & (3).

The Eleventh Circuit has said that, to establish disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to rise to the claimed pain. *Wilson*, 284 F.3d at 1225.

The Plaintiff further contends that the ALJ made mistakes of fact in evaluating the Plaintiff's credibility. The ALJ concluded that the Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible. [Tr. 17-18]. In support of this conclusion, the ALJ did not find the Plaintiff's allegations supported by the objective medical evidence. Dr. Miller treated the Plaintiff for pain but in November 2005 (one month before his insured status expired) noted that the Plaintiff had achieved adequate control of his pain and that the Plaintiff did not have problems with side effects from the medication. The Plaintiff did not have depression or anxiety.

13

The Plaintiff also contends that the ALJ misstated the Plaintiff's testimony regarding his activities. The Plaintiff testified: "[W]ell I go to Rhode Island to see my family once in a while, and to look at different properties, you know, and naturally I wanted to see my physician the last visit I made ....". [Tr. 226]. The ALJ asked, "....how many times in the last, say, year, have you traveled to Rhode Island?" A. "[J]ust once, just this last time. I just went – I just flew myself". [Tr. 227]. The ALJ also asked if the Plaintiff still was driving .A "[N]ot really, Your honor. I fall asleep a lot. On the floor, sometimes I could fall asleep. If I'm driving I could fall asleep, so I was really told not to drive because of the medications I'm on. (ALJ) Q. "[W]ho told you that? A "[D]r. Miller. (ALJ) Q. "[O]kay. So when was the last time you drove? " A '[I] drive like – if it's a short distance, like ten minutes, like to the market or something, you, I'll sneak around the corner and do some – you know, to take the car if I feel okay. You know what I'm saying?" The Plaintiff further testified that he didn't drive long distances because he didn't want to endanger people. However, the Plaintiff then went on to say that he had driven just a week before the hearing was held. [Tr. 227-228].

The Eleventh Circuit has recognized that credibility determinations are the province of the ALJ. *Moore v. Barnhart* , 405 F.3d 1208, 1211 (11th Cir. 2005). In making a credibility finding, the ALJ must articulate specific reasons for questioning the Plaintiff's credibility and his reasons for rejecting the Plaintiff's testimony must be supported by substantial evidence *Hale v. Bowen*, 831 F.2d 1007, 1011-12 (11th Cir. 1987). In this case, the ALJ considered the Plaintiff's subjective complaints and adequately explained his

reasons for discrediting those complaints.

### 5. THE ALJ'S HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT WAS INCOMPLETE

The Plaintiff asserts that the hypothetical question to the vocational expert regarding the availability of sedentary work was incomplete because it did not include all the limitations asserted by Dr. Miller. The vocational expert described the Plaintiff's job as a construction superintendent as light exertional level work with a SVP of 7 which provides numerous transferable skills. [Tr. 229, 230]. As argued above, the ALJ did not accept Dr. Miller's assessment of the Plaintiff's functional capacity. The ALJ must consider the Plaintiff's residual functional capacity, age, education and work experience in conjunction with the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2. If a claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled"or "not disabled".

The ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience and residual functional capacity for a sedentary exertional level including lifting of ten pounds; walking or standing about two hours of an eight-hour day and sitting about six hours of an eight-hour day.

The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as: the unskilled sedentary work of a surveillance system monitor, a call out operator and/or work as an information clerk. Based on the testimony of the vocational expert, the ALJ

determined the Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. [Tr. 20].

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 3rd day of March 2009.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
All Parties of Record
All Counsel of Record